UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:15-cv-00108-MOC

| | |
|---|---|
| LINDA M. HARRISON, <br><br> Plaintiff, <br><br><br><br> CAROLYN W. COLVIN, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY, <br><br> Defendant. | ORDER |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#13). The matter has been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff filed applications for Title II disability and Title XVI supplemental security income benefits on July 19, 2011 and July 25, 2011, respectively, alleging disability beginning March 1, 2009. (Tr. 204, 208). Her claim was denied at the initial and reconsideration levels for review. (Tr. 88, 89, 113-14). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on October 11, 2013, at which Plaintiff was without legal representation. (Tr. 27, 29-31). On February 6, 2014, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 15). The Appeals Council denied Plaintiff's Request for Review on June 19, 2015 (Tr. 1), rendering the

ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted her available administrative remedies, and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.   Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

2

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of her severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

With an alleged onset date of March 1, 2009, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date. (Tr. 20). At step two, the ALJ found that Plaintiff has the following severe impairments: chronic back pain, bilateral knee pain, migraine headache, hypertension, depression and borderline intellectual functioning. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567 (b) and 416.967(b) except she is limited to frequent climbing, stooping, kneeling, crouching and crawling. She is also limited to simple, routine, repetitive tasks." (Tr.

23). At step four, the ALJ found that Plaintiff was incapable of performing past relevant work. (Tr. 25). At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Id. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 26).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff seeks review of the Commissioner's final administrative decision, alleging that the ALJ erred by: 1) failing to give a full function-by-function analysis and explanation of the nonexertional mental functions associated with Plaintiff's mental impairments in compliance with the directives of SSR 96–8p; 2) failing to give a explanation as to why limitations contained in medical opinions to which he gave substantial weight were not included in the RFC finding; and 3) improperly weighing the medical opinions of record in accordance with 20 CFR §§ 404.1527(c), 416.927(c). For the reasons explained herein, the court finds that remand is appropriate based on Plaintiff's first assignment of error.

#### 2. First Assignment of Error: Mental RFC and Function-by-Function Analysis

Plaintiff argues that the ALJ failed to comply with the directives of SSR 96-8p in assessing Plaintiff's mental impairments. Specifically, Plaintiff argues that the ALJ erred by failing to give a complete function-by-function analysis of her nonexertional mental functions associated with her severe mental impairments of migraine headaches, depression, and borderline intellectual functioning. (Tr. 20). The ALJ found that Plaintiff has the following degrees of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P,

Appendix 1: mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 22-23). See 20 C.F.R. § 416.920a(c).

In formulating RFC, the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. Id. at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) . . . it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding here that Plaintiff was restricted to "simple, routine, repetitive tasks." (Tr. 23). The "basic mental demands of... unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4; see also SSR 96-8P, 1996 WL 374184, at *6 (setting forth work-related mental activities required for competitive work).

Only after a function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p

Appendix 1: mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 22-23). See 20 C.F.R. § 416.920a(c).

In formulating RFC, the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. Id. at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) . . . it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding here that Plaintiff was restricted to "simple, routine, repetitive tasks." (Tr. 23). The "basic mental demands of... unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4; see also SSR 96-8P, 1996 WL 374184, at *6 (setting forth work-related mental activities required for competitive work).

Only after a function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p

"explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7. The Fourth Circuit has explained that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, __F.3d__, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (citation and internal quotation marks omitted)).

The Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) held that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

In this instance, despite the ALJ's finding that Plaintiff had the severe mental impairments of migraine headaches, depression, and borderline intellectual functioning (Tr. 20), as well as moderate difficulties in maintaining concentration, persistence or pace (Tr. 22-23), the ALJ did not perform an explicit function-by-function analysis as required by SSR 96-8p. But that

7

failure alone, as the Fourth Circuit explained in Mascio, is not enough to require remand. Instead, the court must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. Here, the ALJ discussed medical evidence of record relevant to Plaintiff's mental impairments as follows.

With respect to the State agency medical consultants, the ALJ gave substantial weight to their opinions that Plaintiff had moderate limitations in maintaining concentration, persistence, and pace, and explicitly stated that he agreed with their assessment in that regard. (Tr. 22-24) Additionally, though the ALJ does not cite to this specific finding in his decision, both state agency consultants opined that Plaintiff is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods, as well as moderately limited in her ability to respond appropriately to changes in a work setting. See (Tr. 76, 110). One consultative examiner noted that Plaintiff partook in daily activities such as driving, performing errands, playing computer games, performing chores, collecting horse figurines, managing her own money, and attending self care activities. (Tr. 105). Despite Defendant's argument that these qualify as consideration of the required functions, the ALJ did not expressly include any of these opined assessments or state which opinions he gave "some weight" to in his written decision. As a result, it is impossible for the court to discern which of the consultants' assessments of Plaintiff's daily activities as they relate to her functional abilities the ALJ found credible and which he rejected.

The ALJ also gave substantial weight to the opinion of Dr. Walter McNulty, a consultative examiner, who opined that Plaintiff's intelligence is estimated to be in the "low

average" range and that despite a moderate limitation in maintaining concentration, persistence, and pace, she would be able to understand, retain, and follow simple instructions. (Tr. 22-23). Dr. McNulty also concluded that Plaintiff's motivation, ability to tolerate stress, and ability to relate to her workers and supervisors was mildly limited. (Tr. 22-23, 25). The claimant alleged irritable moods, poor sleep and mood swings that would adversely affect her ability to maintain concentration and attention. (Tr. 23).

> In light of the medical evidence to which he gave significant weight, the ALJ found that:
>
> With regard to the claimant's depression and borderline intellectual functioning, the restriction to simple, routine, repetitive tasks of unskilled work adequately addresses her mental health limitations. The medical evidence of record and reports of functioning in the file support a conclusion that the claimant is capable of understanding, remembering, and carrying out simple instructions. While the claimant has moderate limitations in concentration, persistence or pace, … there is no evidence that her cognition and state of mind are so seriously impaired as to preclude the performance of simple, routine, repetitive tasks.

(Tr. 24).

The Commissioner argues that the ALJ's specific reliance on, and assignment of great weight to, the opinion of Dr. Walter McNulty and the state agency consultants regarding their assessment of Plaintiff's mental limitations is a sufficient explanation of how simple, routine, repetitive tasks fully accommodate a moderate limitation in concentration, persistence, and pace. However, their findings, similar to that of the ALJ, are not sufficiently supported by medical evidence in light of the standard set forth in <u>Mascio</u>. Similar to the reliance on the consultant's medical reports, the court finds that the ALJ's above mentioned conclusory reference to Dr. McNulty's mental RFC assessment does not account for the issue of Plaintiff's functional abilities. Although the ALJ discusses Dr. McNulty's conclusion that the claimant's ability to <u>relate</u> to her coworkers or supervisors and tolerate stress was mildly impaired and that she would be able to "understand, retain, and follow simple instructions" (Tr. 24-25), there is no discussion

9

in the ALJ's decision of how Plaintiff's mental limitations affect her abilities to "use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); see also 20 C.F.R. 404.1545(c). Though Defendant attempts to piece together sufficient statements throughout the record indicating that the ALJ did consider the functions, as required by SSR 96-8p, those efforts fall short.

The Fourth Circuit in Mascio also concluded that remand of the ALJ decision was appropriate because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. Mascio, 780 F.4d at 636. Because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions," remand was appropriate. Id. at 637. Thus, in addition to determining whether the ALJ's failure to conduct a function-by-function analysis merits remand, the court must determine whether the ALJ's explanation satisfies the requirement under current precedent that the Commissioner explain the work conditions under which a person with non-exertional limitations can perform a full day's work for a full work week, to wit, the conditions precedent to "staying-on-task."

The general references by the ALJ to the several pieces of medical record evidence regarding Plaintiff's mental health do not address her mental ability to function in the workplace or her ability to stay on task for a full work day. The RFC does not impose any limitation related to such ability. The ALJ gave great weight to at least some of the state agency consultants' opinions as to mental limitations. Both of those consultants opined that Plaintiff would be moderately limited in her ability to complete a normal workday and workweek without

10

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. The ALJ neither credits nor discredits these findings in his opinion. Without offering any connection to Plaintiff's ability to perform a full day's work for a full work week, the ALJ simply states that the "medical evidence of record and report(s)" support his determination that the restriction to simple, routine, repetitive tasks of unskilled work sufficiently address her mental health limitations. As a result, just as in Mascio, this court finds that "the ALJ . . . opinion is sorely lacking in the analysis needed for us to review meaningfully [his] conclusions . . . although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday," Mascio, 780 F.3d at 636-37, which is particularly troubling given evidence that she would be limited in such ability.

Finally, the court finds that the ALJ's decision here on mental limitations is squarely foreclosed by Mascio. The majority of district courts in North Carolina, including this court, have repeatedly found in the wake of Mascio that RFC restrictions to "simple, routine, repetitive tasks" do not adequately account for Plaintiff's limitations in concentration, persistence, and pace without sufficient accompanying analysis. See, e.g., Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 WL 5242927, at *4 (E.D.N.C. Sept. 8, 2015) (holding that a limitation to simple, routine, repetitive tasks with only occasional contact with the general public and few workplace changes did not sufficiently address claimant's limitations in pace); Raynor v. Colvin, No. 5:14–CV–271–BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and

persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); Salmon v. Colvin, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace nor her ability to say on task); Hagerdorn v. Colvin, No. 2:12–cv–29–RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, accounted for claimant's ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015) (finding hypothetical posed to VE limiting claimant to "simple, routine, repetitive tasks [and requiring that claimant] should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations" did not account for claimant's moderate limitations in concentration, persistence, and pace); Leach v. Colvin, No. 4:15-CV-00021-RN, 2016 WL 50722, at *4 (E.D.N.C. Jan. 4, 2016) (holding that RFC limiting claimant to "the use of commonsense understanding to carry out oral, written, and diagrammatic instructions with frequent contact with coworkers and the public" was insufficient to address limitations in concentration, persistence, or pace).

In sum, the court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full

workday, to be necessary here. See Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.") (internal citation omitted). The court also finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of her severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### 3. *Remaining Assignments of Error*

The court will not review the remaining assignments of error as it appears that the final determination of the Commissioner does not conform to the requirements of Mascio, resulting in the need for a new hearing.

## V. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Finding that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the

Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED that:**

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED;**

(2) Plaintiff's Motion for Summary Judgment (#9) is **GRANTED;**

(3) the Commissioner's Motion for Summary Judgment (# 13) is **DENIED;** and

(4) this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: July 11, 2016

Max O. Cogburn Jr
United States District Judge